IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JOHN EDWARD MILLER, Defendant. | No. 1:20-cr-107-CJW-MAR <br><br> **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS INDICTMENT** |

Defendant John Edward Miller provides the following reply to the government's Response to Defendant's Motion to Dismiss Indictment (Doc. 61).

The Court committed Mr. Miller to the Attorney General for hospitalization "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1). Mr. Miller's competency hearing occurred 196 days ago; the Court entered its commitment order 189 days ago. (*See* Docs. 53, 54.) Yet Mr. Miller still sits at the Linn County Jail—his case, his life, and appropriate mental health treatment all on hold for no excusable reason.

Nevertheless, the government contends that Mr. Miller is out of luck because, in its view, § 4241(d)(1)'s clock starts only when the defendant reaches a medical facility. And, just as *United States v. Carter*, __ F. Supp. 3d __, 2022 WL 483636 (D.D.C. Jan. 27, 2022), supports Mr. Miller's interpretation, the government has non-binding case law in its favor as well. (*See* Doc. 61 at 4-7.) But there are problems with the government's analysis and the cases that support it.

First, the government isolates the term "hospitalize" without regard to the remainder of the statute. "In ascertaining the plain meaning of the statute, the court must look to the particular

statutory language at issue, *as well as the language and design of the statute as a whole.*" *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (emphasis added). The Court complied with § 4241(d), which, upon the finding of incompetency, required "commit[ment of] the defendant to the custody of the Attorney General." The statute then states that "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months." Once a court commits the defendant, nothing in the statute authorizes the government to delay the hospitalization period or otherwise extend the defendant's detention—in this case, simply because the executive branch does not have its house in order.

The government's reading also undermines the statute's purpose and design. Congress enacted § 4241(d) in response to *Jackson v. Indiana*, 406 U.S. 715 (1972), which held that indefinite commitment of an incompetent defendant violates the right to due process. *Carter*, 2022 WL 483636, at *7. The statute places a reasonable deadline on the § 4241(d)(1) evaluation and, ultimately, on the detention of a defendant who is still entitled to the presumption of innocence. If the Court deems the government's reading to be correct, then § 4241(d)(1) is essentially meaningless, because the government has license to detain an incompetent defendant for as long as it wants, so long as the holding facility is not a medical facility. That is the type of "absurd consequence[]" that a court should avoid in interpreting a statute with multiple possible constructions. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1827 n.4 (2020) (Kavanaugh, J., dissenting).

Finally, the government unconvincingly suggests that even if Mr. Miller established a violation of § 4241(d)(1), dismissal is unwarranted because he is not the victim of "outrageous or flagrant government misconduct." (Doc. 61 at 7-8.) The situation is indeed outrageous, but that

2

is not the standard for dismissal.  *See Carter*, 2022 WL 483636, at *8.[1]  Rather, what matters is whether any such violation affected Mr. Miller's "substantial rights."  Fed. R. Crim. P. 52(a).  It has.  The BOP has already suggested that Mr. Miller was insane when he committed the charged crimes.  (Doc. 37-1 at 7.)  The untimeliness of the § 4241(d)(1) evaluation is delaying the inevitable—some form of commitment proceedings.  Regardless whether such proceedings would result in Mr. Miller's freedom, he would not be languishing in a county jail with no programming, no counseling, and no meaningful contact with loved ones.

"The government failed to meet [the Insanity Defense Reform Act's] four-month deadline for an assessment.  The government still seeks to assess [Mr. Miller] at a backlogged facility.  And now, as a result of its own actions, the government faces the choice" of seeking to commit Mr. Miller or dismissing the indictment.  *Carter*, 2022 WL 483636, at *9.  The Court should force the government to make the choice now.

Respectfully Submitted,

 /s/ Brad Hansen
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL:  brad_hansen@fd.org
ATTORNEY FOR DEFENDANT

---

[1] *See also generally United States v. Limones-Valles*, No. 16-CR-4060-LTS, 2016 WL 11383834, at *14 (N.D. Iowa Oct. 19, 2016) (recommending dismissal of indictment predicated on deportation marred by "understandabl[e]" mistake by immigration authorities), *accepted*, 2016 WL 7489446.

CERTIFICATE OF SERVICE

      I hereby certify that on July 5, 2022, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

                                          */s/ Brad Hansen*